# Exhibit A

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1 | Andrew Hudson (DC Bar No. 996294)
2 | (202) 326-2213 / ahudson@ftc.gov
Karen Hobbs (DC Bar No. 469817)
3 | (202) 326-3587 / khobbs@ftc.gov 600
Pennsylvania Ave., NW, CC-8528
4 | Washington, DC 20580
5 |
6 | Local Counsel
Delilah Vinzon (CA Bar No. 222681)
7 | (310) 824-4328 / dvinzon@ftc.gov
10990 Wilshire Boulevard, Suite 400
8 | Los Angeles, California 90024
9 |
10 |
Attorneys for Plaintiff
11 | Federal Trade Commission

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **Federal Trade Commission**, | No. 2:19-CV-4355 |
| Plaintiff, | [PROPOSED] STIPULATED FINAL ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT AGAINST MOHAMMAD DIAB |
| vs. | |
| **AlliedWallet, Inc., et al.**, | |
| Defendants. | |

Plaintiff the Federal Trade Commission ("FTC" or "Commission"), filed its

Complaint for permanent injunction and other equitable relief in this matter

pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15

U.S.C. § 53(b) against AlliedWallet, Inc., Allied Wallet, Ltd., GTBill, LLC, and

GTBill Ltd., Ahmad Khawaja (also known as Andy Khawaja), Mohammad Diab

(also known as Moe Diab), and Amy Rountree (collectively, "Defendants").

Defendant Mohammad Diab has waived service of the summons and the

Complaint.  The FTC and Diab stipulate to the entry of this Stipulated Final Order

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

for Permanent Injunction and Monetary Judgment ("Order") to resolve all matters in dispute in this action between them.

THEREFORE, IT IS ORDERED as follows:

**FINDINGS**

1.      This Court has jurisdiction over this matter.

2.      The Complaint charges that Diab participated in unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45(a), by processing or arranging for processing of charges to consumers' credit and debit cards on behalf of Defendants' clients, which had obtained the payments through fraud or were otherwise violating the law.

3.      Diab neither admits nor denies any of the allegations in the Complaint, except as specifically stated in this Order.  Only for purposes of this action, Diab admits the facts necessary to establish jurisdiction.

4.      Diab waives any claim that he may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agrees to bear his own costs and attorney fees.

5.      Diab and the Commission waive all rights to appeal or otherwise challenge or contest the validity of this Order.

**DEFINITIONS**

For the purpose of this Order,  the following definitions apply:

A.      "**ACH Debit**" means any completed or attempted debit to a Person's account at a Financial Institution that is processed electronically through the Automated Clearing House Network.

B.      "**Acquirer**" means a business organization, Financial Institution, or an agent of a business organization or Financial Institution that has authority from an organization that operates or licenses a credit card system (e.g., VISA, Inc., Mastercard Inc., American Express Company, and Discover Financial Services, Inc.) to authorize Merchants to accept, transmit, or process payment by credit card

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

through the credit card system for money, goods or services, or anything else of value.

C.     "**Chargeback**" means a procedure whereby an issuing bank or other Financial Institution charges all or part of an amount of a Person's credit or debit card transaction back to the Acquirer or other Financial Institution.

D.     "**Corporate Defendants**" means AlliedWallet, Inc., Allied Wallet, Ltd., GTBill, LLC, GTBill Ltd., and any of their successors and assigns.

E.     "**Credit Card Laundering**" means: (a) presenting or depositing into, or causing or allowing another to present or deposit into, the credit card system for payment, a Credit Card Sales Draft generated by a transaction that is not the result of a credit card transaction between the cardholder and the Merchant; (b) employing, soliciting, or otherwise causing or allowing a Merchant, or an employee, representative, or agent of a Merchant, to present to or deposit into the credit card system for payment, a Credit Card Sales Draft generated by a transaction that is not the result of a credit card transaction between the cardholder and the Merchant; (c) obtaining access to the credit card system through the use of a business relationship or an affiliation with a Merchant, when such access is not authorized by the Merchant Account agreement or the applicable credit card system; or (d) presenting or depositing into, or causing or allowing another to present or deposit into, the credit card system for payment, a Credit Card Sales Draft generated by a transaction that is the result of a credit card transaction between the cardholder and the Merchant, through a Merchant Account that is held in the name of a Sponsored Merchant that is not the Merchant.

F.     "**Credit Card Sales Draft**" means any record or evidence of a credit card transaction.

G.     "**Defendants**" means all of the Individual Defendants and the Corporate Defendants, individually, collectively, or in any combination.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1      H.     "**Financial Institution**" means any institution the business of which is

2  engaging in financial activities as described in section 4(k) of the Bank Holding

3  Company Act of 1956 (12 U.S.C. § 1843(k)). An institution that is significantly

4  engaged in financial activities is a Financial Institution.

5      I.     "**Independent Sales Organization**" **or** "**ISO**" means any Person that

6  (a) enters into an agreement or contract with a Payment Processor, Acquirer or

7  Financial Institution to sell or market Payment Processing services to a Merchant;

8  (b) matches, arranges for, or refers Merchants to a Payment Processor or Acquirer

9  for Payment Processing services, or that matches, arranges for, or refers a Payment

10  Processor or Acquirer to Merchants for Payment Processing services; or (c) is

11  registered as an ISO or merchant service provider ("MSP") with VISA,

12  Mastercard, or any credit card association.

13      J.     "**Individual Defendants**" means Ahmad Khawaja (also known as

14  Andy Khawaja), Mohammad Diab (also known as Moe Diab), and Amy Rountree.

15      K.     "**Merchant**" means any Person engaged in the sale or marketing of

16  any goods or services or a charitable contribution, including any Person who

17  applies for ISO or Payment Processing services. The term "Merchant" does not

18  include a Payment Facilitator, but does include a Sponsored Merchant.

19      L.     "**Merchant Account**" means any account with an Acquirer or other

20  Financial Institution, service provider, Payment Processor, ISO, Payment

21  Facilitator, or other entity that enables an individual, a business, or other

22  organization to accept payments of any kind.

23      M.     "**Payment Facilitator**" means an entity that is registered with a credit

24  card system by an Acquirer to facilitate transactions on behalf of Sponsored

25  Merchants, and receives settlement of transaction proceeds from the Acquirer on

26  behalf of the Sponsored Merchants.

27      N.     "**Payment Processing**" means transmitting sales transaction data on

28  behalf of a Merchant or providing a Person, directly or indirectly, with the means

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1   used to charge or debit accounts through the use of any payment method or

2   mechanism, including, but not limited to, credit cards, debit cards, prepaid cards,

3   stored value cards, ACH Debits, and Remotely Created Payment Orders.  Whether

4   accomplished through the use of software or otherwise, Payment Processing

5   includes, among other things:  (a) reviewing and approving Merchant applications

6   for payment processing services; (b) transmitting sales transaction data or

7   providing the means to transmit sales transaction data from Merchants to

8   Acquirers, Payment Processors, ISOs, or other Financial Institutions; (c) clearing,

9   settling, or distributing proceeds of sales transactions from Acquirers or Financial

10  Institutions to Merchants; (d) processing Chargebacks or returned Remotely

11  Created Payment Orders or ACH Debits; or (e) sign a merchant acceptance

12  agreement on behalf of an Acquirer, or receive settlement of transaction proceeds

13  from an Acquirer, on behalf of a sponsored Merchant.

14      O.   "**Payment Processor**" means any Person providing Payment

15  Processing services in connection with another Person's sale of goods or services,

16  or in connection with any charitable donation.

17      P.   "**Person**" means any natural person, organization, or legal entity,

18  including a corporation, limited liability company, partnership, proprietorship,

19  association, cooperative, government or governmental subdivision or agency, or

20  any other group or combination acting as an entity.

21      Q.   "**Remotely Created Payment Order**" means a payment instruction

22  or order, whether created in electronic or paper format, drawn on a payor's

23  financial account that is initiated or created by the payee, and which is deposited

24  into or cleared through the check clearing system.  For purposes of this definition,

25  an account includes any financial account or credit or other arrangement that

26  allows checks, payment instructions, or orders to be drawn against it that are

27  payable by, through, or at a bank.

28

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1    R.    "**Sponsored Merchant**" means any Person or entity to whom a

2    Payment Facilitator agrees to provide Payment Processing services.

3    ORDER

4    I.    BAN ON PAYMENT PROCESSING

5    IT IS ORDERED that Diab, whether acting directly or through an

6    intermediary, is permanently restrained and enjoined from Payment Processing,

7    and from assisting others engaged in Payment Processing, whether directly or

8    through an intermediary.

9    II.    BAN ON CREDIT CARD LAUNDERING

10   IT IS FURTHER ORDERED that Diab, whether acting directly or through

11   an intermediary, is permanently restrained and enjoined from Credit Card

12   Laundering, and from assisting others engaged in Credit Card Laundering, whether

13   directly or through an intermediary.

14   **III.    PROHIBITIONS RELATED TO MERCHANT ACCOUNTS**

15   IT IS FURTHER ORDERED that Diab, Diab's agents and employees, and

16   all other Persons in active concert or participation with any of them, who receive

17   actual notice of this Order, whether acting directly or indirectly, are each

18   permanently restrained and enjoined from:

19   A.    Making, or assisting others in making, directly or by implication, any

20   false or misleading statement in order to obtain Payment Processing services,

21   including but not limited to false or misleading statements about the geographic

22   location, name, identity, or corporate form of the Merchant;

23   B.    Failing to disclose to an Acquirer or other Financial Institution,

24   service provider, Payment Processor, ISO, or other entity that enables a Person to

25   accept payments of any kind any material information related to a Merchant

26   Account including, but not limited to, (a) the identity of any owner, manager,

27   director, or officer of the applicant for or holder of a Merchant Account, and (b)

28   any connection between an owner, manager, director, or officer of the applicant for

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1   or holder of a Merchant Account and any Person who, for a reason related to

2   excessive Chargebacks or fraud, identification as a Questionable Merchant per the

3   Mastercard Questionable Merchant Audit Program, merchant collusion, illegal

4   transaction, or identity theft, had a Merchant Account terminated by a Payment

5   Processor or a Financial Institution, or has been fined or otherwise disciplined in

6   connection with a Merchant Account by a Payment Processor or a Financial

7   Institution; and

8         C.     Engaging in any tactics to avoid fraud and risk monitoring programs

9   established by any Financial Institution, Acquirer, or the operators of any payment

10   system, including, but not limited to, balancing or distributing sales transaction

11   volume or sales transaction activity among multiple Merchant Accounts or

12   merchant billing descriptors; splitting a single sales transaction into multiple

13   smaller transactions; or using a shell company to apply for a Merchant Account.

14   **IV.   PROHIBITION AGAINST ASSISTING AND FACILITATING**

15       IT IS FURTHER ORDERED that Diab, Diab's agents and employees, and

16   all other Persons in active concert or participation with any of them, who receive

17   actual notice of this Order, whether acting directly or indirectly, are permanently

18   restrained and enjoined from providing substantial assistance or support to any

19   Person that they know, or should know, is engaged in:

20         A.     Misrepresenting, directly or by implication, any material aspect of the

21   performance, efficacy, nature, or central characteristics of any goods or services;

22         B.     Misrepresenting, directly or by implication, any material aspect of the

23   nature or terms of any refund, cancellation, exchange, or repurchase policies;

24         C.     The unauthorized debiting or charging of consumer bank or credit

25   card accounts; or

26         D.     Any deceptive, unfair, or abusive act or practice prohibited by Section

27   5 of the FTC Act or by the TSR.

28

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

### V.    MONETARY JUDGMENT

IT IS FURTHER ORDERED that:

A.    Judgment in the amount of One Million Dollars ($1,000,000) is entered in favor of the Commission against Diab as equitable monetary relief.

B.    Diab is ordered to pay to the Commission the Judgment set forth above in Section V.A as follows, time being of the essence:

    1)    Within 7 days of entry of this Order Diab is ordered to pay to the Commission Seven Hundred Thousand Dollars ($700,000.00), which, as Diab stipulates, his undersigned counsel holds in escrow for no purpose other than payment to the Commission.  Such payment must be made by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.

    2)    Within 90 days of entry of this Order Diab is ordered to pay to the Commission Three Hundred Thousand Dollars ($300,000.00).  Such payment must be made by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.

C.    To secure the payment obligation under Subsection B.2, above, Defendant Diab and his spouse REDACTED (hereinafter, "Spouse"), in their capacities as trustees of the Diab Family Trust, a revocable living trust formed under and governed by the laws of California and dated July 13, 2018, grant the Commission a security interest in certain property, commonly known as REDACTED REDACTED , and proceeds thereof (hereinafter, the "Collateral"), as set forth in the deed of trust attached hereto as Attachment A (hereinafter, "Deed").  Diab and Spouse, as the only trustees of the Diab Family Trust, shall cause the Diab Family Trust to do all things necessary for the Diab Family Trust to implement and comply with its obligations in this Order.  Diab

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1   represents and acknowledges that the Commission is relying on the material

2   representations that the Diab Family Trust is the sole owner in fee simple of the

3   Collateral, that title to the Collateral is marketable, and that the Collateral currently

4   is not encumbered by any other lien, mortgage, deed of trust, assignment, pledge,

5   security interest, or other interest except as previously disclosed to the

6   Commission.  Diab and Spouse represent that none of the encumbrances on the

7   Collateral is in default.

8          D.     Diab and Spouse further agree that, as of the date on which they sign

9   this Order, they shall refrain from transferring, converting, encumbering (including

10  encumbering by failing to pay any taxes or assessments), selling, assigning, or

11  otherwise disposing of the Collateral, except with the express prior written

12  permission of counsel for the Commission and for the purpose of satisfying Diab's

13  obligation in Subsection V.B.2, above, and the proceeds of any such transaction

14  shall be paid at settlement to the Commission or to the escrow account of

15  Defendant Diab's attorney, Michael Thurman, in trust for the Commission,

16  ***provided, however,*** that this limitation shall end with the completion of all

17  payments listed in Subsection V.B, above.

18         E.     Diab and Spouse hereby release and waive any statutory, common

19  law, or other homestead exemption that may apply to the Collateral for purposes of

20  the security interest granted to the Commission, ***provided, however,*** that this

21  release and waiver shall end with the completion of all payments listed in

22  Subsection V.B, above.

23         F.     Diab and Spouse shall cooperate fully with the Commission and be

24  responsible for preparing, executing, and recording the necessary documents and

25  doing whatever else is reasonably necessary or desirable to perfect, evidence, and

26  effectuate the Commission's liens, security interests, and other protections granted

27  herein. Diab shall submit to the clerk's office for recording all security documents

28  used to perfect the Commission's lien on the Collateral within fourteen (14) days

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

after entry of this Order, and shall deliver to the Commission copies of such officially recorded documents and a statement showing the outstanding balance owed on any preexisting security deeds as of the date of entry of this Order within seven (7) days after receipt of such documents.

G.  In the event that Diab fails to make the required payment when due under Subsection V.B.2, above, or the Commission is not allowed to retain any such payment, or if Diab or Spouse fails to comply with Subsections V.B.2 and V.C-F above and such failure is not timely cured:

1)  The entire Judgment, less any amounts previously paid, shall immediately become due and payable by Diab.  Interest computed at the rate prescribed under 28 U.S.C. § 1961, as amended, shall immediately begin to accrue on the unpaid balance. Time is of the essence for the payments specified in this Section; and

2)  Diab and Spouse consent to the appointment of a receiver by the Court for purposes of taking possession and control of and liquidating the Collateral, with the rights, powers, and privileges of an equity receiver. The costs and expenses of the receivership, including reasonable compensation for the receiver and personnel retained by the receiver, will be paid solely from the proceeds of the Collateral. The Commission, Diab, and Spouse waive the requirements of 28 U.S.C. § 2001 and 28 U.S.C. § 2004 in connection with any pending or contemplated sale by the receiver.

H.  Upon full payment of his obligations under Subsection V.B.2 of this Order and a subsequent written request by Diab, the Commission agrees to reconvey or release the Deed within a reasonable time.  Diab shall prepare and provide to the Commission any documents required to reconvey or release the

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1   Deed, and shall be responsible for recording the necessary documents and doing

2   whatever else is reasonably necessary or desirable to perfect, evidence, and

3   effectuate the Commission's reconveyance or release, and shall pay all of the fees

4   and costs related to such reconveyance or release, including filing fees.  In

5   addition, the Commission shall promptly cancel the Deed to the extent necessary to

6   facilitate the sale or encumbrance of the Collateral if the funds owed to the

7   Commission pursuant to Subsection V.B.2 of this Order are remitted directly to the

8   Commission, or to the escrow account of Defendant Diab's attorney, Michael

9   Thurman, in trust for the Commission, from the proceeds of such sale or

10   encumbrance immediately upon closing of such sale or encumbrance.

11       I.      The Commission's agreement to this Order is expressly based on the

12   material representations by Diab that the value of the equity in the Collateral is at

13   least Four Hundred and Fifty Thousand Dollars ($450,000.00).

14       J.      If, upon motion of the Commission, a Court determines that Diab

15   made a material misrepresentation or omitted material information concerning

16   ownership or authority to pledge the Collateral, any encumbrance of the Collateral,

17   or the value of the Collateral, the entire Judgment amount in Subsection V.A.,

18   above (which the parties stipulate only for purposes of this Section represents the

19   consumer injury alleged in the Complaint), less any amounts previously paid by

20   Diab, shall immediately become due and payable by him.  Interest computed at the

21   rate prescribed under 28 U.S.C. § 1961, as amended, shall immediately begin to

22   accrue on the unpaid balance.

23       ***Provided*** that proceedings instituted under this provision would be in

24   addition to, and not in lieu of, any other remedies, as may be provided by law,

25   including but not limited to, contempt proceedings or any other proceedings that

26   the Commission may initiate to enforce this Order.

27

28

11

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## VI.    ADDITIONAL MONETARY PROVISIONS

IT IS FURTHER ORDERED that:

A.    Diab relinquishes dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B.    The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

C.    The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

D.    Diab acknowledges that his Taxpayer Identification Number (Social Security Number), which Diab has submitted to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

E.    All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund.  If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Diab's practices alleged in the Complaint.  Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement.  Diab has no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## VII.   COOPERATION

IT IS FURTHER ORDERED that Diab must fully cooperate with representatives of the Commission in this case and in any investigation related to or associated with the transactions or the occurrences that are the subject of the Complaint.  Diab must provide truthful and complete information, evidence, and testimony.  Diab must appear in the United States for interviews, discovery, hearings, trials, and any other proceedings that a Commission representative may reasonably request upon 5 days written notice, or other reasonable notice, at such places and times as a Commission representative may designate, without the service of a subpoena.

## VIII.  ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Diab obtain acknowledgments of receipt of this Order:

A.     Diab, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.     For 10 years after entry of this Order, Diab for any business that he, individually or collectively with any other Defendants, is the majority owner or controls directly or indirectly, must deliver a copy of this Order to:  (1) all principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibilities for Payment Processing services and all agents and representatives who participate in providing Payment Processing services; (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting; and (4) any Acquirer, Payment Processor, Payment Facilitator, or ISO that provides Diab with a Merchant Account now or in the future.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

C.      Delivery of this Order must occur within 7 days of entry of this Order for current personnel.  For all other personnel, delivery must occur before they assume their responsibilities.

D.      From each individual or entity to which Diab delivered or delivers a copy of this Order, that Diab must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## IX.    COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Diab make timely submissions to the Commission:

A.      One year after entry of this Order, Diab must submit a compliance report, sworn under penalty of perjury:

1.      Diab must:  (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Diab; (b) identify all of Diab's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which Diab must describe if he knows or should know due to his own involvement); (d) describe in detail whether and how Diab is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2.      Additionally, Diab must:  (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which he performs services whether as an employee or otherwise and any entity in which he has any ownership interest; and (c) describe in detail his involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

B.    For 10 years after entry of this Order, Diab must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.    Diab must report any change in:  (a) any designated point of contact; or (b) the structure of any entity that Diab has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including:  creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.    Additionally, Diab must report any change in:  (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which he performs services whether as an employee or otherwise and any entity in which he has any ownership interest,  and identify the name, physical address, and any Internet address of the business or entity.

C.    Diab must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against Diab within 14 days of its filing.

D.    Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding:  "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on:  _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.    Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1    Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580.  The

2    subject line must begin:  *FTC v. AlliedWallet, Inc., et al*., Matter No. 1723155.

3    **X.     RECORDKEEPING**

4           IT IS FURTHER ORDERED that Diab must create certain records for 10

5    years  after entry of the Order, and retain each such record for 5 years.

6    Specifically, Diab for any business that he, individually or collectively with any

7    other Defendants, is a majority owner or controls directly or indirectly,  must create

8    and retain the following records:

9           A.     accounting records showing the revenues from all goods or services

10   sold;

11          B.     personnel records showing, for each person providing services,

12   whether as an employee or otherwise, that person's:  name; addresses; telephone

13   numbers; job title or position; dates of service; and (if applicable) the reason for

14   termination;

15          C.     records of all consumer complaints and refund requests pertaining to

16   Payment Processing services, whether received directly or indirectly, such as

17   through a third party, and any response;

18          D.     all records necessary to demonstrate full compliance with each

19   provision of this Order, including all submissions to the Commission;

20          E.     documents sufficient to show monthly and yearly Chargeback and

21   refund amounts both by dollar amounts and number of transactions; and

22          F.     all communications and contracts with credit card companies, banks,

23   Financial Institutions and Payment Processors.

24

25

26

27

28

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## XI.   COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Diab's compliance with this Order and any failure to transfer any assets as required by this Order:

A.     Within 14 days of receipt of a written request from a representative of the Commission, Diab must:  submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.     For matters concerning this Order, the Commission is authorized to communicate directly with Diab.  Diab must permit representatives of the Commission to interview any employee or other Person affiliated with Diab who has agreed to such an interview.  The Person interviewed may have counsel present.

C.     The Commission may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Diab or any individual or entity affiliated with Diab, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.     Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning Diab pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## XII.   RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**SO ORDERED this _____ day of _____, 2019.**

_____
UNITED STATES DISTRICT JUDGE

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1   **SO STIPULATED AND AGREED:**

2   **FOR PLAINTIFF FEDERAL TRADE COMMISSION:**

3

4   ALDEN F. ABBOT
    General Counsel

5

6   _____          Date: 5/20/2019

7   Andrew Hudson
    Karen S. Hobbs
8   Federal Trade Commission
    600 Pennsylvania Ave., NW
9   Mailstop CC-8528
10  Washington, DC 20580
    (202) 326-2213 / ahudson@ftc.gov
11  (202) 326-3587 / khobbs@ftc.gov

12

13  Local Counsel
    Delilah Vinzon (CA Bar No. 222681)
14  (310) 824-4328 / dvinzon@ftc.gov
    10990 Wilshire Boulevard, Suite 400
15  Los Angeles, California 90024

16

17

18

19

20

21

22

23

24

25

26

27

28

19

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1 | **FOR DEFENDANT MOHAMMAD DIAB:**

2 | *Michael A. Thurman*                    Date:  4/11/19

3 | Michael A. Thurman
   | Thurman Legal
4 | 1055 E. Colorado Blvd., 5th Floor
5 | Pasadena, CA 91106
6 | (626) 399-6205 / michael@thurman-legal.com

7 |

8 | **MOHAMMAD DIAB**

9 |
10 |                              Date:  4-11-19
   | Mohammad Diab
11 |

12 |

13 | **FOR THE DIAB FAMILY TRUST:**

14 |
15 |                              Date:  4-11-19
   | Mohammad Diab, Trustee
16 | REDACTED
17 |                              Date:  4-11-19
   | _____ Trustee
18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

20

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# Attachment A

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Upon Recording Return to:

Space above this line for recording data

## DEED OF TRUST

This Deed of Trust, made this __ day of _____, 2019, between the Trustees of the Diab Family Trust dated July 13, 2018, Mohammad Diab and REDACTED herein called TRUSTORS, whose address is REDACTED, Western Fidelity Associates, d/b/a Western Fidelity Trustees, a California limited liability company, herein called TRUSTEE, and the Federal Trade Commission, 600 Pennsylvania Avenue, N.W., Washington D.C. 20580, herein called BENEFICIARY,

Witnesseth: That Trustor IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS to TRUSTEE IN TRUST, WITH POWER OF SALE, that property in Los Angeles County, California, described as:

# REDACTED

TOGETHER WITH the rents, issues, and profits thereof, SUBJECT, HOWEVER, to the right, power and authority given to and conferred upon Beneficiary by paragraph (10) of the provisions herein to collect and apply such rents, issues and profits.

For the Purpose of Securing Payment of the Monetary Judgment of the Stipulated Order for Permanent Injunction and Other Equitable Relief ("the Stipulated Order"), entered as to Defendant-Mohammad Diab, (the "Defendant-Debtor"), for and in consideration of, the Beneficiary's consent to settlement of the lawsuit styled *Federal Trade Commission v. AlliedWallet Inc., et al.,* Case No. _____, filed in the U.S. District Court of the District of Nevada.

To Protect the Security of This Deed of Trust, Trustor Agrees: By the execution and delivery of this Deed of Trust, that provisions (1) to (14), inclusive, of the fictitious deed of trust recorded in Book T-3878 at page 874 for the County of Los Angeles in the office of the County Recorder of the county where said property is located hereby are adopted and incorporated herein and made a part hereof as fully as though set forth herein at length; that they will observe and perform said provisions; and that the references to property, obligations, and parties in said provisions shall be construed to refer to the property, obligations and parties set forth in this Deed of Trust.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.

TRUSTORS:

_____
Mohammad Diab
Trustee of the Diab Family Trust

REDACTED

_____
Trustee of the Diab Family Trust


STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

On _____, 2019, before me, _____,
Notary Public, personally appeared

_____

Who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacities, and that by his/her/their signature(s) on the instrument, the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


Signature: _____          Seal: