1
2
3
4
5
6
7
8
9
10
11
12
13

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **Federal Trade Commission**, | No. 2:19-CV-4355-SVW-E |
| Plaintiff, | STIPULATED FINAL ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT AGAINST AHMAD ("ANDY") KHAWAJA, ALLIEDWALLET, INC., ALLIED WALLET, LTD., GTBILL, LLC, AND GTBILL LTD. |
| vs. | |
| **AlliedWallet, Inc., et al.**, | |
| Defendants. | |

Plaintiff the Federal Trade Commission ("FTC" or "Commission"), filed its Complaint for permanent injunction and other equitable relief in this matter pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b) against AlliedWallet, Inc., Allied Wallet, Ltd., GTBill, LLC, and GTBill Ltd., Ahmad Khawaja (also known as Andy Khawaja), Mohammad Diab (also known as Moe Diab), and Amy Rountree (collectively, "Defendants"). Defendants AlliedWallet, Inc., Allied Wallet, Ltd., GTBill, LLC, GTBill Ltd., and

1   Ahmad Khawaja (also known as Andy Khawaja), (collectively, "Settling

2   Defendants") have waived service of the summons and the Complaint.  The FTC

3   and Settling Defendants stipulate to the entry of this Stipulated Final Order for

4   Permanent Injunction and Monetary Judgment ("Order") to resolve all matters in

5   dispute in this action between them.

6            THEREFORE, IT IS ORDERED as follows:

7                              **FINDINGS**

8       1.      This Court has jurisdiction over this matter.

9       2.      The Complaint charges that Settling Defendants participated in unfair

10  acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45 (a), by

11  processing or arranging for processing of charges to consumers' credit and debit

12  cards on behalf of Defendants' Clients.

13      3.      Settling Defendants neither admit nor deny any of the allegations in

14  the Complaint, except as specifically stated in this Order.  Only for purposes of this

15  action, Settling Defendants admit the facts necessary to establish jurisdiction.

16      4.      Settling Defendants waive any claim that they may have under the

17  Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this

18  action through the date of this Order, and agree to bear their own costs and attorney

19  fees.

20      5.      Settling Defendants and the Commission waive all rights to appeal or

21  otherwise challenge or contest the validity of this Order.

22                             **DEFINITIONS**

23          For the purpose of this Order,  the following definitions apply:

24      A.      "**ACH Debit**" means any completed or attempted debit to a Person's

25  account at a Financial Institution that is processed electronically through the

26  Automated Clearing House Network.

27      B.      "**Acquirer**" means a business organization, Financial Institution, or an

28  agent of a business organization or Financial Institution that has authority from an

2

organization that operates or licenses a credit card system (e.g., VISA, Inc., Mastercard Inc., American Express Company, and Discover Financial Services, Inc.) to authorize Merchants to accept, transmit, or process payment by credit card through the credit card system for money, goods or services, or anything else of value.

C. "**Card-Not-Present Transaction**" means a debit or credit card transaction whereby the Person's debit or credit card is not physically swiped, scanned, or imprinted.

D. "**Chargeback**" means a procedure whereby an issuing bank or other Financial Institution charges all or part of an amount of a Person's credit or debit card transaction back to the Acquirer or other Financial Institution.

E. "**Chargeback Rate**" means the proportion (expressed as a percentage) of Chargebacks out of the total number of attempted credit or debit card sales transactions.

F. "**Client**" means any Person (a) who obtains, directly or indirectly, from any Defendant a Merchant Account, or (b) to whom any Defendant provides any Payment Processing services.

G. "**Corporate Defendants**" means AlliedWallet, Inc., Allied Wallet, Ltd., GTBill, LLC, GTBill Ltd., and any of their successors and assigns.

H. "**Covered Client**" means any Client who offers to sell, sells, promotes, or markets, the following goods or services: cryptocurrency; discount buying clubs; foreclosure protection or guarantees; lottery sales or sweepstakes; medical discount benefits packages including discount medical cards; multi-level marketing distribution; nutraceuticals; payment aggregators; third party Payment Processors; penny auctions; real estate seminars and training programs; computer technical support services; and goods or services with Negative Option Features.

I. "**Credit Card Laundering**" means: (a) presenting or depositing into, or causing or allowing another to present or deposit into, the credit card system for

payment, a Credit Card Sales Draft generated by a transaction that is not the result of a credit card transaction between the cardholder and the Merchant; (b) employing, soliciting, or otherwise causing or allowing a Merchant, or an employee, representative, or agent of a Merchant, to present to or deposit into the credit card system for payment, a Credit Card Sales Draft generated by a transaction that is not the result of a credit card transaction between the cardholder and the Merchant; (c) obtaining access to the credit card system through the use of a business relationship or an affiliation with a Merchant, when such access is not authorized by the Merchant Account agreement or the applicable credit card system; or (d) presenting or depositing into, or causing or allowing another to present or deposit into, the credit card system for payment, a Credit Card Sales Draft generated by a transaction that is the result of a credit card transaction between the cardholder and the Merchant, through a Merchant Account that is held in the name of a Sponsored Merchant that is not the Merchant.

J. "**Credit Card Sales Draft**" means any record or evidence of a credit card transaction.

K. "**Defendants**" means all of the Individual Defendants and the Corporate Defendants, individually, collectively, or in any combination.

L. "**Financial Institution**" means any institution the business of which is engaging in financial activities as described in section 4(k) of the Bank Holding Company Act of 1956 (12 U.S.C. § 1843(k)). An institution that is significantly engaged in financial activities is a Financial Institution.

M. "**High Risk Client**" means any Client that (a) on an annual basis, whether measured by a single Merchant Account or by the aggregate of all Merchant Accounts held by the Client, processes more than fifteen percent (15%) Card-Not-Present Transactions and more than two hundred thousand dollars ($200,000) in total Card-Not-Present Transactions; or (b) is a Covered Client.

N. **"Independent Sales Organization" or "ISO"** means any Person that (a) enters into an agreement or contract with a Payment Processor, Acquirer or Financial Institution to sell or market Payment Processing services to a Merchant; (b) matches, arranges for, or refers Merchants to a Payment Processor or Acquirer for Payment Processing services, or that matches, arranges for, or refers a Payment Processor or Acquirer to Merchants for Payment Processing services; or (c) is registered as an ISO or merchant service provider ("MSP") with VISA, Mastercard, or any credit card association.

O. **"Individual Defendants"** means Ahmad Khawaja (also known as Andy Khawaja), Mohammad Diab (also known as Moe Diab), and Amy Rountree.

P. **"Liquidating Receiver"** means the Person appointed by the Court in this matter to serve as Liquidating Receiver pursuant to Section X, below.

Q. **"Merchant"** means any Person engaged in the sale or marketing of any goods or services or a charitable contribution, including any Person who applies for ISO or Payment Processing services. The term "Merchant" does not include a Payment Facilitator, but does include a Sponsored Merchant.

R. **"Merchant Account"** means any account with an Acquirer or other Financial Institution, service provider, Payment Processor, ISO, Payment Facilitator, or other entity that enables an individual, a business, or other organization to accept payments of any kind.

S. **"Money Making Opportunity"** means anything, tangible or intangible, that is offered, offered for sale, sold, or traded based wholly or in part on representations, either express or implied, about past, present, or future income, profit, or appreciation.

T. **"Negative Option Feature"** means, in an offer or agreement to sell or provide any product or service, a provision under which the consumer's silence or failure to take an affirmative action to reject products or services or to cancel the agreement is interpreted by the Client, seller or Merchant as acceptance of the

offer.  Offers or agreements with Negative Option Features include, but are not limited to:  (a) free or introductory price trial offers in which the consumer receives a product or service for free or at a nominal or introductory price for an initial period and will incur an obligation to pay or pay a greater amount for the product or service if he or she does not take affirmative action to cancel, reject, or return the product or service before the end of that period; (b) continuity plans in which, subsequent to the consumer's agreement to the plan, the seller or provider automatically ships products to a consumer unless the consumer notifies the seller or provider within a certain time not to ship the products; and (c) automatic renewal plans in which the seller or provider automatically renews the agreement and charges the consumer unless the consumer cancels before the renewal.

U.     "**Payment Facilitator**" means an entity that is registered with a credit card system by an Acquirer to facilitate transactions on behalf of Sponsored Merchants, and receives settlement of transaction proceeds from the Acquirer on behalf of the Sponsored Merchants.

V.     "**Payment Processing**" means transmitting sales transaction data on behalf of a Merchant or providing a Person, directly or indirectly, with the means used to charge or debit accounts through the use of any payment method or mechanism, including, but not limited to, credit cards, debit cards, prepaid cards, stored value cards, ACH Debits, and Remotely Created Payment Orders.  Whether accomplished through the use of software or otherwise, Payment Processing includes, among other things:  (a) reviewing and approving Merchant applications for payment processing services; (b) transmitting sales transaction data or providing the means to transmit sales transaction data from Merchants to Acquirers, Payment Processors, ISOs, or other Financial Institutions; (c) clearing, settling, or distributing proceeds of sales transactions from Acquirers or Financial Institutions to Merchants; (d) processing Chargebacks or returned Remotely Created Payment Orders or ACH Debits; or (e) sign a merchant acceptance

agreement on behalf of an Acquirer, or receive settlement of transaction proceeds from an Acquirer, on behalf of a sponsored Merchant.

W.     "**Payment Processor**" means any Person providing Payment Processing services in connection with another Person's sale of goods or services, or in connection with any charitable donation.

X.     "**Person**" means any natural person, organization, or legal entity, including a corporation, limited liability company, partnership, proprietorship, association, cooperative, government or governmental subdivision or agency, or any other group or combination acting as an entity.

Y.     "**Outbound Telemarketing**" means any plan, program, or campaign that is conducted to induce the purchase of goods or services by use of one or more telephones, and which involves a telephone call initiated by a Person other than the consumer, whether or not covered by the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310.

Z.     "**Receivership Estate**" means all assets identified in Section VII.B, below, as well as any other assets transferred to the Liquidating Receiver pursuant to this Order, or other Order entered by this Court.

AA.     "**Remotely Created Payment Order**" or "**RCPO**" means a payment instruction or order, whether created in electronic or paper format, drawn on a payor's financial account that is initiated or created by the payee, and which is deposited into or cleared through the check clearing system.  For purposes of this definition, an account includes any financial account or credit or other arrangement that allows checks, payment instructions, or orders to be drawn against it that are payable by, through, or at a bank.

BB.     "**Sales Agent**" means a Person that matches, arranges, or refers prospective Clients or Clients to a Payment Processor or ISO for Payment Processing, but does not hold any contractual liability in the event of losses related to the Payment Processing activities conducted by or on behalf of Clients.  As

such, a Sales Agent may be involved in recommending a particular Payment Processor or ISO to a prospective Client, forwarding to the Payment Processor or ISO a prospective Client's or Client's merchant application, or negotiating rates and fees charged by a Payment Processor or ISO, but a Sales Agent may not be involved in any Payment Processing and may not act as an ISO.

CC.    "**Settling Defendants**" means AlliedWallet, Inc., Allied Wallet, Ltd., GTBill, LLC, GTBill Ltd., and Ahmad Khawaja (also known as Andy Khawaja), individually, collectively, or in any combination.

DD.    "**Sponsored Merchant**" means any Person or entity to whom a Payment Facilitator agrees to provide Payment Processing services.

EE.    "**Total Return Rate**" means the proportion (expressed as a percentage) of all attempted ACH Debit or RCPO transactions that are returned through the banking system for any reason, whether before or after payment, out of the total number of such attempted transactions, calculated separately for each transaction type.

## ORDER

## I.    BAN ON PROCESSING FOR CERTAIN MERCHANT CATEGORIES

IT IS ORDERED that Settling Defendants, whether acting directly or through an intermediary, are each permanently restrained and enjoined from Payment Processing, and from assisting others engaged in Payment Processing, whether directly or through an intermediary, for any Person:

A.    Offering to sell, selling, promoting or marketing the following goods or services:

      1)    Money Making Opportunities;

      2)    credit repair;

      3)    credit card protection;

      4)    identity theft protection;

| | |
|---|---|
| 1 |          5)     debt collection, debt counseling, debt settlement, or debt |
| 2 |                  consolidation; |

5)    debt collection, debt counseling, debt settlement, or debt consolidation;

6)    mortgage or loan modification;

7)    government grants; or

8)    timeshare resale;

B.    Engaged in Outbound Telemarketing;

C.    Listed on the Mastercard Member Alert to Control High-Risk Merchants (MATCH) list for any of the following reasons: excessive Chargebacks or fraud, fraud conviction, laundering, identification as a Questionable Merchant per the Mastercard Questionable Merchant Audit Program, merchant collusion, illegal transactions, or identity theft;

D.    Registered as, or qualifies for registration as, a high risk-merchant type according to Mastercard or Visa's rules and regulations; or

E.    That is a Covered Client subject to an Order from any lawsuit brought by the Commission or any other state or federal law enforcement agency relating to consumer protection or telemarketing laws or regulations.

**II.    BAN ON CREDIT CARD LAUNDERING**

IT IS FURTHER ORDERED that Settling Defendants, whether acting directly or through an intermediary, are each permanently restrained and enjoined from Credit Card Laundering, and from assisting others engaged in Credit Card Laundering, whether directly or through an intermediary.

**III.    PROHIBITIONS RELATED TO MERCHANT ACCOUNTS**

IT IS FURTHER ORDERED that Settling Defendants, Settling Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are each permanently restrained and enjoined from:

A.    Making, or assisting others in making, directly or by implication, any false or misleading statement in order to obtain Payment Processing services,

1  including but not limited to false or misleading statements about the geographic

2  location, name, identity, or corporate form of the Merchant;

3        B.     Failing to disclose to an Acquirer or other Financial Institution,

4  service provider, Payment Processor, ISO, or other entity that enables a Person to

5  accept payments of any kind any material information related to a Merchant

6  Account including, but not limited to, (a) the identity of any owner, manager,

7  director, or officer of the applicant for or holder of a Merchant Account, and (b)

8  any connection between an owner, manager, director, or officer of the applicant for

9  or holder of a Merchant Account and any Person who, for a reason related to

10  excessive Chargebacks or fraud, identification as a Questionable Merchant per the

11  Mastercard Questionable Merchant Audit Program, merchant collusion, illegal

12  transaction, or identity theft, had a Merchant Account terminated by a Payment

13  Processor or a Financial Institution, or has been fined or otherwise disciplined in

14  connection with a Merchant Account by a Payment Processor or a Financial

15  Institution; and

16        C.     Engaging in any tactics to avoid fraud and risk monitoring programs

17  established by any Financial Institution, Acquirer, or the operators of any payment

18  system, including, but not limited to, balancing or distributing sales transaction

19  volume or sales transaction activity among multiple Merchant Accounts or

20  merchant billing descriptors; splitting a single sales transaction into multiple

21  smaller transactions; or using a shell company to apply for a Merchant Account.

22  **IV.    PROHIBITION AGAINST ASSISTING AND FACILITATING**

23        IT IS FURTHER ORDERED that Settling Defendants, Settling Defendants'

24  officers, agents, employees, and attorneys, and all other Persons in active concert

25  or participation with any of them, who receive actual notice of this Order, whether

26  acting directly or indirectly, are permanently restrained and enjoined from

27  providing substantial assistance or support to any Person that they know, or should

28  know, is engaged in:

A.     Misrepresenting, directly or by implication, any material aspect of the performance, efficacy, nature, or central characteristics of any goods or services;

B.     Misrepresenting, directly or by implication, any material aspect of the nature or terms of any refund, cancellation, exchange, or repurchase policies;

C.     The unauthorized debiting or charging of consumer bank or credit card accounts; or

D.     Any deceptive, unfair, or abusive act or practice prohibited by Section 5 of the FTC Act or by the TSR.

**V.     SCREENING OF PROSPECTIVE HIGH RISK CLIENTS**

IT IS FURTHER ORDERED that Settling Defendants, Settling Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from Payment Processing or acting as an ISO or Sales Agent for any prospective High Risk Client without first engaging in a reasonable screening of the prospective High Risk Client to determine whether the prospective High Risk Client's business practices are, or are likely to be, deceptive or unfair within the meaning of Section 5 of the FTC Act, or violation of the Telemarketing Sales Rule.  Such reasonable screening shall include, but not be limited to:

A.     Obtaining from each prospective High Risk Client, including the principal(s) and controlling Person(s) of the entity, any Person(s) with a majority ownership interest in the entity, and any corporate name, trade name, fictitious name or aliases under which such Person(s) conduct or have conducted business:

1.     A description of the nature of the prospective High Risk Client's business, including describing the nature of the goods and services sold and methods of sale, for which the prospective High Risk Client seeks Payment Processing services;

2. The name of the principal(s) and controlling Person(s) of the entity, and Person(s) with a majority ownership interest in the entity;

3. A list of all business and trade names, fictitious names, DBAs, and Internet websites under or through which the prospective High Risk Client has marketed or intends to market the goods and services for which the prospective High Risk Client seeks Payment Processing services;

4. Each physical address at which the prospective High Risk Client has conducted business or will conduct the business(es) identified pursuant to subsection (1) of this Section V.A;

5. The name and address of every Acquirer, originating depository Financial Institution (if Defendant proposes to provide Payment Processing services for ACH Debit or RCPO transactions to such prospective High Risk Client), and Payment Processor used by the prospective High Risk Client during the preceding two years, and all merchant identification numbers used by any such banks or Payment Processors in connection with the prospective High Risk Client;

6. The prospective High Risk Client's past Chargeback Rate and Total Return Rate (if Defendant proposes to provide Payment Processing services for ACH Debit or RCPO transactions) for the preceding three (3) months, or for the preceding six months if the prospective High Risk Client is a Covered Client, and estimates of future Chargeback Rates and Total Return Rates (if Defendant proposes to provide Payment Processing services for ACH Debit or RCPO transactions);

7. The names of trade and bank references; and

8. Whether the prospective High Risk Client, including the principal(s) and controlling Person(s) of the entity, any Person(s) with a majority ownership interest in the entity, and any corporate name, trade name, fictitious name or aliases under which such Person(s) conduct or have conducted business, has ever been:

1          a)     placed in a payment card association's Chargeback monitoring

2                    program during the preceding two years; or

3          b)     the subject of a complaint filed by the Commission or any other

4                    state or federal law enforcement agency;

5       B.     Taking reasonable steps to assess the accuracy of the information

6 provided pursuant to Sections V.A of this Order, including but not limited to:

7 reviewing the Internet websites used by the prospective High Risk Client to market

8 its goods or services; obtaining and reviewing copies of monthly Payment

9 Processing statements issued by any bank, ISO, Sales Agent, Acquirer, or Payment

10 Processor used by the High Risk Client during the preceding six (6) months;

11 obtaining and reviewing all current marketing materials for each good or service

12 related to the offer for which Settling Defendants would provide the prospective

13 High Risk Client with Payment Processing, ISO, or Sales Agent services.  The

14 purpose of such steps is to determine whether the prospective High Risk Client is

15 engaged in any of the following acts or practices, in which case Settling

16 Defendants shall not provide Payment Processing or act as an ISO or Sales Agent

17 for the prospective High Risk Client:

18       1.     Failing to clearly and conspicuously disclose all products and services

19 that are sold in conjunction with the offered product or service, and the total cost to

20 purchase, receive, or use, any products or services that are the subject of the sales

21 offer;

22       2.     Misrepresenting any material aspect of the performance, efficacy,

23 nature, or central characteristics of goods or services that are the subject of the

24 sales offer;

25       3.     Failing to clearly and conspicuously disclose all material terms and

26 conditions of an offer;

27

28

1        4.      Misrepresenting, expressly or by implication, any material aspect of

2 the prospective High Risk Client's refund, cancellation, exchange, or repurchase

3 policies; and

4        5.      Causing billing information to be submitted for payment without the

5 customer's express authorization.

## VI. MONITORING OF HIGH RISK CLIENTS

7        IT IS FURTHER ORDERED that Settling Defendants, Settling Defendants'

8 officers, agents, employees, and attorneys, and all other Persons in active concert

9 or participation with any of them, who receive actual notice of this Order, whether

10 acting directly or indirectly, in connection with Payment Processing or acting as an

11 ISO or Sales Agent, are permanently restrained and enjoined from:

12        A.      Failing to monitor the sales activity of all current Clients to identify

13 Clients that should be designated as High Risk Clients requiring additional

14 screening pursuant to Section V of this Order, and for newly-designated High Risk

15 Clients, failing to complete the reasonable screening process described in Section

16 V of the Order within a one month period;

17        B.      Failing to monitor each High Risk Client's transactions to determine

18 whether the High Risk Client is engaged in practices that are deceptive or unfair in

19 violation of Section 5 of the FTC Act. Such monitoring shall include, but not be

20 limited to, regularly reviewing High Risk Clients' Internet websites from an IP

21 address that is not associated with Settling Defendants, regularly reviewing each

22 High Risk Client's Chargeback Rates, Total Return Rates (if Defendant proposes to

23 provide Payment Processing services for ACH Debit or RCPO transactions), and

24 reasons provided for these rates, as well as examining any unusual or suspect

25 transaction patterns, values, and volume;

26        C.      Failing to calculate and update at least on a monthly basis for each

27 High Risk Client the Chargeback Rate and Total Return Rate (if Defendant

28 proposes to provide Payment Processing services for ACH Debit or RCPO

transactions).  For any Client with multiple processing accounts, the calculation of the Chargeback Rate and Total Return Rate shall be made for each of the High Risk Client's individual processing accounts, and in the aggregate for each High Risk Client;

D.     Failing to immediately stop processing sales transactions and, as soon as practical but in no more than 5 days, close all processing accounts for:

1.     Any Covered Client whose Total Return Rate exceeds two and one-half percent (2.5%) and whose total number of ACH Debit or RCPO returned transactions in any month exceeds forty (40) transactions;

2.     Any Covered Client whose monthly Chargeback Rate exceeds one percent (1%) and whose total number of Chargebacks exceeds forty (40) in two of the past six months; and

3.     Any Covered Client that Settling Defendants know or should know is engaged in tactics to avoid fraud and risk monitoring programs established by any Financial Institution, Acquirer, or the operators of any payment system, including, but not limited to, balancing or distributing sales transaction volume or sales transaction activity among multiple Merchant Accounts or merchant billing descriptors; splitting a single sales transaction into multiple smaller transactions, or using shell companies to apply for additional Merchant Accounts.

E.     Failing to immediately conduct a reasonable investigation of the cause of Total Return Rate (if Settling Defendant proposes to provide Payment Processing services for ACH Debit or RCPO transactions) or Chargeback Rates (a reasonable investigation includes, but is not limited to: verifying and updating the truth and accuracy of information gathered in compliance with Section V of this Order and any other advertising of the High Risk Client; confirming that the High Risk Client has obtained required consumer authorizations for the transactions; contacting Financial Institutions and Better Business Bureaus to gather detailed information, including complaints and other relevant information, regarding the

High Risk Client; reviewing from an IP address that is not associated with Settling Defendants the Internet websites used by the High Risk Client to market its goods and services; searching publicly available sources for legal actions taken by the Commission or other state or federal law enforcement agencies against the High Risk Client; and conducting "test" shopping to determine the High Risk Client's sales practices, where possible) for:

1.      Any High Risk Client, excluding Covered Clients, whose Total Return Rate exceeds two and one-half percent (2.5%) and whose total number of ACH Debit or RCPO returned transactions in any month exceeds forty (40); and

2.      Any High Risk Client, excluding Covered Clients, whose monthly Chargeback Rate exceeds one percent (1%) and whose total number of Chargebacks exceeds forty (40) in two of the past six months.

F.      Failing to stop processing sales transactions and close all processing accounts for any High Risk Client investigated pursuant to Subsection E, above, within 60 days of commencing the investigation, unless Settling Defendants draft a written report establishing facts that demonstrate, by clear and convincing evidence, that the High Risk Client's business practices related to the offer(s) for which Settling Defendants provide Payment Processing are not deceptive or unfair in violation of Section 5 of the FTC Act and are not in violation of the Telemarketing Sales Rule.

G.      Failing to immediately stop processing sales transactions and close all processing accounts for any High Risk Client that Settling Defendants know or should know is engaged in tactics to avoid fraud and risk monitoring programs established by any Financial Institution, Acquirer, or the operators of any payment system, including, but not limited to, balancing or distributing sales transaction volume or sales transaction activity among multiple Merchant Accounts or merchant billing descriptors; splitting a single sales transaction into multiple

1  smaller transactions, or using shell companies to apply for additional Merchant

2  Accounts.

3  **VII.  MONETARY JUDGMENT AND PARTIAL SUSPENSION**

4  IT IS FURTHER ORDERED that:

5  A.  Judgment in the amount of One Hundred Ten Million, Fifty Thousand,

6  Nine Hundred Forty-One Dollars ($110,050,941) is entered in favor of the

7  Commission against Settling Defendants, jointly and severally, as equitable

8  monetary relief.

9  B.  Immediately upon entry of this Order, Defendant Khawaja shall

10  cooperate fully and take such steps as the Liquidating Receiver may require,

11  including executing any documents, providing any necessary information, and

12  paying any necessary fees or expenses, to cause the transfer to the Liquidating

13  Receiver, or to his qualified settlement fund, within 7 days of entry of this Order,

14  of possession and legal and equitable title to (a) the real property located in the city

15  of Los Angeles, county of Los Angeles, state of California, commonly known as

16  3100 Benedict Canyon Drive, Beverly Hills, California 90210-1033, Parcel

17  Number 4382-001-023, and (b) all furnishings and other personal property

18  purchased for and/or located at the real property described in (a), above, with

19  estimated value of $500,000 (together, hereinafter, "Benedict Canyon Property").

20  1.  Following transfer of title and possession, the Liquidating Receiver

21  shall be responsible for all maintenance, utilities, taxes, homeowner's association

22  fees, and all other expenses of any nature related to the Benedict Canyon Property,

23  which were not incurred prior to the transfer.

24  2.  Defendant Khawaja represents that there are no liens or encumbrances

25  on the Benedict Canyon Property other than those disclosed in the financial

26  representations identified in Subsection VII.D, below, and that he will not add any

27  such encumbrances after signing this Order.

28

3.     The costs and expenses of transferring the Benedict Canyon Property shall be paid by Defendant Khawaja.

4.     Defendant Khawaja expressly agrees that the Benedict Canyon Property is not homestead property, and further hereby forever waives, releases, discharges, and disclaims all right, title, and interest in the Benedict Canyon Property.

5.     Defendant Khawaja represents and acknowledges that the Commission is relying on the material representation that he is the sole owner in fee simple of the Benedict Canyon Property.

6.     Until Defendant Khawaja transfers title and possession of the Benedict Canyon Property to the Liquidating Receiver, Defendant Khawaja shall:

a)     Maintain and take no action to diminish the value of the Benedict Canyon Property, including any structures, fixtures, and appurtenances thereto, in the same condition as on the date Defendant Khawaja executed his sworn financial statement dated April 26, 2019;

b)     Remain current on all amounts due and payable on the Benedict Canyon Property, including but not limited to tax, insurance, homeowner's assessments, reasonable and necessary maintenance, and similar fees; and

c)     Retain existing insurance coverage on the Benedict Canyon Property in full force and effect.

7.     In order to transfer possession of the Benedict Canyon Property to the Liquidating Receiver, Defendant Khawaja shall vacate the Benedict Canyon Property in good and clean condition, and deliver all keys and security codes, if any, to the Liquidating Receiver along with written notice that possession is surrendered.

C.     Upon transfer of all assets described in Subsection VII.B to the Liquidating Receiver, the remainder of the judgment is suspended, subject to the Subsections below.

D.     The Commission's agreement to the suspension of the judgment is expressly premised upon the truthfulness, accuracy, and completeness of Settling Defendants' sworn financial statements and related documents (collectively, "financial representations") submitted to the Commission, namely:

1.     the Financial Statement of Defendant Khawaja signed by Ahmad Khawaja on April 26, 2019, including the attachments;

2.     the Financial Statement of AlliedWallet, Inc., signed by Ahmad Khawaja on April 26, 2019, including the attachments;

3.     the Financial Statement of Allied Wallet, Ltd., signed by Ahmad Khawaja on April 26, 2019, including the attachments;

4.     the Financial Statement of GTBill LLC, signed by Ahmad Khawaja on April 26, 2019, including the attachments; and

5.     the Financial Statement of GTBill Ltd., signed by Ahmad Khawaja on April 26, 2019, including the attachments.

E.     The suspension of the judgment will be lifted as to any Settling Defendant if, upon motion by the Commission, the Court finds that (1) Settling Defendant failed to disclose any material asset, materially misstated the value of any asset, or made any other material misstatement or omission in the financial representations identified above or in the representations regarding property in Subsection VII.B, above, or (2) Settling Defendant is in default on any obligation under Section VII of this Order.

F.     If the suspension of the judgment is lifted, the judgment becomes immediately due as to that Settling Defendant in the amount specified in Subsection VII.A, above (which the parties stipulate only for purposes of this

19

Section represents the consumer injury alleged in the Complaint), plus interest computed from the date of entry of this Order.

**VIII. ADDITIONAL MONETARY PROVISIONS**

IT IS FURTHER ORDERED that:

A.     Settling Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B.     The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

C.     The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

D.     Settling Defendants acknowledge that their Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which Settling Defendants have submitted to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

E.     All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund.  If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Settling Defendants' practices alleged

in the Complaint. Any money not used for such equitable relief is to be deposited
to the U.S. Treasury as disgorgement. Settling Defendants have no right to
challenge any actions the Commission or its representatives may take pursuant to
this Subsection.

**IX.    CONSUMER INFORMATION**

IT IS FURTHER ORDERED that Settling Defendants are permanently
restrained and enjoined from directly or indirectly failing to provide sufficient
consumer information to enable the Commission to efficiently administer
consumer redress. If a representative of the Commission requests in writing any
information related to redress, Settling Defendants must provide it, in the form
prescribed by the Commission, within 14 days.

**X.     LIQUIDATING RECEIVER**

IT IS FURTHER ORDERED that:

A.     Stephen Donell is hereby appointed as a Liquidating Receiver with the
full power of an equity receiver. The Liquidating Receiver shall be an agent of this
Court, and solely the agent of this Court, in acting as Liquidating Receiver under
this Order. The Liquidating Receiver shall comply with all laws and Local Rules
of this Court governing receivers. Except for an act of gross negligence, the
Liquidating Receiver and any professionals it retains to assist it shall not be liable
for any loss or damage incurred by Settling Defendants, their agents, employees,
and attorneys or any other person, by reason of any act performed or omitted to be
performed by the Liquidating Receiver or any professional it retains to assist it in
connection with the discharge of its duties and responsibilities.

B.     The Liquidating Receiver shall assume responsibility for management
and maintenance of the Receivership Estate, including all assets transferred
pursuant to the section titled Monetary Judgment and Partial Suspension at Section
VII of this Order. The Liquidating Receiver shall preserve and protect such assets
by undertaking necessary repairs, procuring appropriate insurance, and making

required payments for taxes, insurance, assessments, reasonable and necessary maintenance, and any other actions necessary to efficiently manage the assets and to maintain their value. Payment for any service or activity necessary to preserve or protect such assets is payable from the assets of the Receivership Estate, without prior approval by the Court. All such payments shall be itemized in the Liquidating Receiver's reports to the Court or motions related to the sale of such asset.

C.     The Liquidating Receiver shall liquidate the assets of the Receivership Estate and all net proceeds, after payment of any liens and necessary expenses of the Liquidating Receiver, shall be paid to the Commission. Such payment shall be made within 7 days following the Court's approval of the Liquidating Receiver's final application for compensation and expenses, by electronic fund transfer in accordance with instructions to be provided by a representative of the Commission.

D.     In liquidating the assets of the Receivership Estate, the following provisions apply:

1.     Pursuant to the provisions of 28 U.S.C. § 2001(b), the Liquidating Receiver shall, at reasonable cost and in a commercially reasonable fashion, liquidate, the assets of the Receivership Estate.

2.     The Court approves the use of a realtor's marketing analysis as one of the three appraisals required by 28 U.S.C. § 2001(b).

3.     Settling Defendants shall cooperate fully with the Liquidating Receiver and take such other steps as the Liquidating Receiver may require in connection with the listing, marketing, and sale of the assets of the Receivership Estate.

4.     Settling Defendants shall sign any documents necessary for the sale of the assets of the Receivership Estate, including, but not limited to, powers of attorney and any documents necessary to effectuate a transfer of any such assets to third parties.

1        5.      Settling Defendants shall cooperate fully and not interfere with the

2    Liquidating Receiver's efforts to enter onto, market, and sell the real or personal

3    property in the Receivership Estate. Settling Defendants shall provide timely and

4    reasonable access to all prospective buyers and realtors, if their cooperation or

5    assistance is necessary to accomplish such access. Settling Defendants shall have

6    no authority, discretion, or control over the Liquidating Receiver's efforts to

7    market or sell the property in the Receivership Estate.

8        6.      All ad valorem taxes, any transfer fees, recording fees, other fees,

9    advertising, and any commissions associated with or resulting from the sale of the

10    assets of the Receivership Estate shall be paid from the proceeds of the sale(s) at

11    the time the assets of the Receivership Estate are sold.

12        E.      The Liquidating Receiver is entitled to reasonable compensation for

13    the performance of duties pursuant to this Order and for the cost of actual out-of-

14    pocket expenses incurred by it.  The Liquidating Receiver's compensation and the

15    compensation of any persons hired by it are to be paid solely from the assets of the

16    Receivership Estate or the proceeds of the sale of the assets of the Receivership

17    Estate, and such payments shall have priority over all other distributions except for

18    any transfer fees, recording fees, or other payments owed through the transfer of

19    the assets of the Receivership Estate at the time of their sale.

20        F.      The Liquidating Receiver shall prepare and file all necessary reports

21    or filings to comply with applicable state or federal laws with regard to the

22    Receivership Estate, file its final report and application for fees, prepare and file

23    the tax return for the Receivership Estate, complete liquidation and terminate its

24    service within six (6) months of the date of this Order unless good cause is shown

25    to extend the estate beyond six (6) months.

26        G.      Upon completion of the above tasks and the final transfer of all funds

27    to the Commission pursuant to this Section, the duties of the Liquidating Receiver

28

| | |
|---|---|
| 1 | shall terminate, be satisfied, and the Liquidating Receiver shall be entitled to an |
| 2 | order discharging the Liquidating Receiver. |
| 3 | **XI.    COOPERATION WITH THE LIQUIDATING RECEIVER** |
| 4 | A.    IT IS FURTHER ORDERED that Settling Defendants, Settling |
| 5 | Defendants' officers, agents, employees, and attorneys, and all other persons in |
| 6 | active concert or participation with any of them, who receive actual notice of this |
| 7 | Order, whether acting directly or indirectly, shall fully cooperate with and assist the |
| 8 | Liquidating Receiver.  This cooperation and assistance shall include, but not be |
| 9 | limited to providing any information to the Liquidating Receiver that is reasonably |
| 10 | necessary to enable the Liquidating Receiver to exercise its authority and discharge |
| 11 | its responsibilities under this Order. |
| 12 | **XII.   COOPERATION** |
| 13 | IT IS FURTHER ORDERED that Settling Defendants must fully cooperate |
| 14 | with representatives of the Commission in this case and in any investigation related |
| 15 | to or associated with the transactions or the occurrences that are the subject of the |
| 16 | Complaint.  Settling Defendants must provide truthful and complete information, |
| 17 | evidence, and testimony.  Defendant Khawaja must appear and Corporate |
| 18 | Defendants must cause their officers, employees, representatives, or agents to |
| 19 | appear for interviews, discovery, hearings, trials, and any other proceedings that a |
| 20 | Commission representative may reasonably request upon 5 days written notice, or |
| 21 | other reasonable notice, at such places and times as a Commission representative |
| 22 | may designate, without the service of a subpoena. |
| 23 | **XIII.  ORDER ACKNOWLEDGMENTS** |
| 24 | IT IS FURTHER ORDERED that Settling Defendants obtain |
| 25 | acknowledgments of receipt of this Order: |
| 26 | A.    Each Settling Defendant, within 7 days of entry of this Order, must |
| 27 | submit to the Commission an acknowledgment of receipt of this Order sworn |
| 28 | under penalty of perjury. |

B.      For 10 years after entry of this Order, Defendant Khawaja for any business that he, individually or collectively with any other Defendants, is the majority owner or controls directly or indirectly, and each Corporate Defendant, must deliver a copy of this Order to:  (1) all principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibilities and all agents and representatives who participate in Payment Processing, sales, marketing, compliance, or fraud monitoring; (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting; and (4) any Financial Institution, including but not limited to, any Acquirer, Payment Processor, Payment Facilitator, payment gateway, or ISO, at which the Settling Defendant has a corporate account now or in the future, including a Merchant Account.

C.      Delivery of this Order must occur within 7 days of entry of this Order for current personnel.  For all other personnel, delivery must occur before they assume their responsibilities.

D.      From each individual or entity to which a Settling Defendant delivered or delivers a copy of this Order, that Settling Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

**XIV.  COMPLIANCE REPORTING**

IT IS FURTHER ORDERED that Settling Defendants make timely submissions to the Commission:

A.      One year after entry of this Order, each Settling Defendant must submit a compliance report, sworn under penalty of perjury:

1.      Each Settling Defendant must:  (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Settling Defendant; (b) identify all of that Settling Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c)

describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which Defendant Khawaja must describe if he knows or should know due to his own involvement); (d) describe in detail whether and how that Settling Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2. Additionally, Defendant Khawaja must: (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which he performs services whether as an employee or otherwise and any entity in which he has any ownership interest; and (c) describe in detail his involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B. For 20 years after entry of this Order, each Settling Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1. Each Settling Defendant must report any change in: (a) any designated point of contact; or (b) the structure of any Corporate Defendant or any entity that Settling Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2. Additionally, Defendant Khawaja must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which he performs services whether as an employee or otherwise and any entity in which he has any ownership

interest, and identify the name, physical address, and any Internet address of the business or entity.

C. Each Settling Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Settling Defendant within 14 days of its filing.

D. Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E. Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: *FTC v. AlliedWallet, Inc., et al.*, Matter No. 1723155.

**XV. RECORDKEEPING**

IT IS FURTHER ORDERED that Settling Defendants must create certain records for 20 years after entry of the Order, and retain each such record for 5 years. Specifically, Corporate Defendants and Defendant Khawaja for any business that he, individually or collectively with any other Defendants, is a majority owner or controls directly or indirectly, must create and retain the following records:

A. accounting records showing the revenues from all goods or services sold;

B. personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name; addresses; telephone

numbers; job title or position; dates of service; and (if applicable) the reason for termination;

      C.     records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

      D.     records necessary to demonstrate that Settling Defendants have requested, received, and reviewed the scripts, advertising and marketing materials of any Person for whom they provide any services;

      E.     all records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission;

      F.     documents sufficient to show monthly and yearly Chargeback and refund amounts both by dollar amounts and number of transactions;

      G.     all communications and contracts with credit card companies, banks, Financial Institutions and Payment Processors; and

      H.     a copy of each unique advertisement or other marketing material.

## XVI. COMPLIANCE MONITORING

      IT IS FURTHER ORDERED that, for the purpose of monitoring Settling Defendants' compliance with this Order and any failure to transfer any assets as required by this Order:

      A.     Within 14 days of receipt of a written request from a representative of the Commission, each Settling Defendant must:  submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

      B.     For matters concerning this Order, the Commission is authorized to communicate directly with each Settling Defendant.  Settling Defendants must permit representatives of the Commission to interview any employee or other

Person affiliated with any Settling Defendant who has agreed to such an interview. The Person interviewed may have counsel present.

C.    The Commission may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Settling Defendants or any individual or entity affiliated with Settling Defendants, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.    Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning Defendant Khawaja pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

**XVII. RETENTION OF JURISDICTION**

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**SO ORDERED this 7th day of June, 2019.**

UNITED STATES DISTRICT JUDGE

**SO STIPULATED AND AGREED:**

**FOR PLAINTIFF FEDERAL TRADE COMMISSION:**

ALDEN F. ABBOT
General Counsel

_____ Date: 5/20/2019
Andrew Hudson
Karen S. Hobbs
Federal Trade Commission
600 Pennsylvania Ave., NW
Mailstop CC-8528
Washington, DC 20580
(202) 326-2213 / ahudson@ftc.gov
(202) 326-3587 / khobbs@ftc.gov



**FOR DEFENDANTS ALLIEDWALLET, INC., ALLIED WALLET, LTD, GTBILL, LLC, GTBILL LTD, AND AHMAD KHAWAJA:**

_____ Date: _____
Jeffrey D. Knowles
Roger Colaizzi
Michael S. Blume
Ellen T. Berge
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, DC 20001
(202) 344-4860 / jdknowles@venable.com
(202) 344-8051 / rcolaizzi@venable.com
(212) 503-0699 / msblume@venable.com
(202) 344-4704 / etberge@venable.com



**ALLIEDWALLET, INC.**

_____ Date: _____
Ahmad Khawaja, Chief Executive Officer

**SO STIPULATED AND AGREED:**

**FOR PLAINTIFF FEDERAL TRADE COMMISSION:**

ALDEN F. ABBOT
General Counsel

_____    Date: _____
Andrew Hudson
Karen S. Hobbs
Federal Trade Commission
600 Pennsylvania Ave., NW
Mailstop CC-8528
Washington, DC 20580
(202) 326-2213 / ahudson@ftc.gov
(202) 326-3587 / khobbs@ftc.gov


**FOR DEFENDANTS ALLIEDWALLET, INC., ALLIED WALLET, LTD, GTBILL, LLC, GTBILL LTD, AND AHMAD KHAWAJA:**

_____    Date: 4/26/19
Jeffrey D. Knowles
Roger Colaizzi
Michael S. Blume
Ellen T. Berge
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, DC 20001
(202) 344-4860 / jdknowles@venable.com
(202) 344-8051 / rcolaizzi@venable.com
(212) 503-0699 / msblume@venable.com
(202) 344-4704 / etberge@venable.com


**ALLIEDWALLET, INC.**

_____    Date: _____
Ahmad Khawaja, Chief Executive Officer

30

1   **SO STIPULATED AND AGREED:**

2

3   **FOR PLAINTIFF FEDERAL TRADE COMMISSION:**

4   ALDEN F. ABBOT
    General Counsel

5

6

7   _____    Date: _____
  Andrew Hudson

8   Karen S. Hobbs

9   Federal Trade Commission
  600 Pennsylvania Ave., NW

10   Mailstop CC-8528

11   Washington, DC 20580
  (202) 326-2213 / ahudson@ftc.gov

12   (202) 326-3587 / khobbs@ftc.gov

13

14

15   **FOR DEFENDANTS ALLIEDWALLET, INC., ALLIED WALLET, LTD,**
  **GTBILL, LLC, GTBILL LTD, AND AHMAD KHAWAJA:**

16

17   _____    Date: _____
  Jeffrey D. Knowles, Attorney

18   VENABLE LLP

19   600 Massachusetts Avenue, NW
  Washington, DC 20001

20   (202) 344-4860 / jdknowles@venable.com

21

22

23   **ALLIEDWALLET, INC.**

24

25   _____    Date: 4/26/19
  Ahmad Khawaja, Chief Executive Officer

26

27

28

**ALLIED WALLET, LTD.**

_____     Date: 4-26-19
Ahmad Khawaja, Chief Executive Officer


**GTBILL, LLC**

_____     Date: 4-26-19
Ahmad Khawaja, Chief Executive Officer


**GTBILL LTD.**

_____     Date: 4-26-19
Ahmad Khawaja, Chief Executive Officer


**AHMAD KHAWAJA**

_____     Date: 4-26-19
Ahmad Khawaja