KATHY BAZOIAN PHELPS (155564)
*kphelps@diamondmccarthy.com*
DIAMOND MCCARTHY LLP
1999 Avenue of the Stars, Suite 1100
Los Angeles, California 90067-4402
Telephone:  (310) 651-2997

Christopher D. Sullivan (148083)
*csullivan@diamondmccarthy.com*
Karen K. Diep (305587)
*kdiep@diamondmccarthy.com*
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA 94111
Telephone: (415) 692-5200

*Proposed Counsel for Stephen J. Donell,*
*Liquidating Receiver*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 2:19-cv-04355-SVW-E |
| Plaintiff, | **MEMORANDUM OF POINTS AND** |
| v. | **AUTHORITIES IN SUPPORT OF *EX*** |
| | ***PARTE* EMERGENCY** |
| ALLIEDWALLET, INC., ET AL., | **APPLICATION FOR ORDER** |
| | **AUTHORIZING: (1) EMPLOYMENT** |
| Defendants. | **OF PHILIP SEYMOUR/KELLER** |
| | **WILLIAMS AS REAL ESTATE** |
| | **BROKER AND APPRAISER; (2)** |
| | **APPOINTMENT OF BRENTWOOD** |
| | **PROPERTY APPRAISAL, INC. AND** |
| | **LIPSEY APPRAISAL SERVICE AS** |
| | **ADDITIONAL APPRAISERS; (3)** |
| | **PRIORITY BORROWING AND** |
| | **ISSUANCE OF RECEIVER'S** |
| | **CERTIFICATES; (4) EMPLOYMENT** |

**OF DIAMOND McCARTHY LLP AS GENERAL COUNSEL; AND (5) AUTHORITY TO RETURN PRORATED MORTGAGE PAYMENT TO DEFENDANT; AND FOR ORDER FOR STAY OF ACTIONS AFFECTING RECEIVERSHIP PROPERTY**

**[No Hearing Set on *Ex Parte* Application]**

# TABLE OF CONTENTS

I.   RELEVANT FACTUAL BACKGROUND ................................................................ 1

     A.   Procedural History ................................................................................... 1

II.  ARGUMENT ........................................................................................................ 5

     A.   The Court's Broad Supervisory Powers and Discretion in Federal
          Receiverships ........................................................................................... 5

     B.   Employment of Broker to List, Market and Sell the Benedict
          Canyon Real Property, Approval of Proposed Listing Agreement,
          and Designation of Appraisers and Approval of Their Employment. ..... 6

     C.   Appointment and Employment of Appraisers. ........................................ 7

     D.   Borrowing and Issuance of Receivership Certificates. ........................... 8

     E.   Employment of Diamond McCarthy LLP as the Receiver's General
          Counsel. .................................................................................................. 11

     F.   .Stay of Actions Against the Receivership Property ............................. 12

III. CONCLUSION .................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Bank of America, N.A. v. CPX Madison Place Office, L.L.C.,*
   Civ. Action Nos. 11-168 and 12-23,  2013 WL 5217559
   (E.D.Ky. Sept. 12, 2013) ........................................................................ 9

*CFTC v. Topworth Int'l, Ltd.,*
   205 F.3d 1107 (9th Cir. 1999) ................................................................ 6

*Diner's Club v. Bumb,*
   421 F.2d 396 (9th Cir. 1970) ................................................................ 14

*In re Ethington,*
   150 B.R. 48 (Bankr. D. Idaho 1993) ..................................................... 14

*International Trust Co. v. Decker Bros.,*
   152 F. 78 (9th Cir. 1907) .................................................................. 9, 10

*Liberte Capital Group, LLC v. Capwill,*
   462 F.3d 543 (6th Cir. 2006) ................................................................ 13

*Murphy v. John Hofman Co.,*
   211 U.S. 562 (1909) ............................................................................. 14

*S.E.C. v. Byers,*
   609 F.3d 87 (2d. Cir. 2010) ............................................................ 13, 14

*S.E.C. v. Callahan,*
   2 F.Supp.2d  (E.D.N.Y. 2014) .............................................................. 15

*S.E.C. v. Capital Consultants, LLC,*
   397 F.3d 733 (9th Cir. 2005) .............................................................. 5, 6

*S.E.C. v. Hardy,*
   803 F .2d 1034 (9th Cir. 1986) .............................................................. 5

*S.E.C. v. Universal Financial,*
   760 F.2d 1034 (9th Cir. 1985) .............................................................. 14

*S.E.C. v. Vescor Capital Corp.,*
   599 F.3d 1189 (10th Cir. 2010) ............................................................ 15

*S.E.C. v. Wenke,*
   622 F.2d 1363 (9th Cir. 1980) .............................................. 5, 12, 13, 14

*S.E.C. v. Wolf,*
   576 F.2d 217 (9th Cir. 1978) ................................................................ 13

*United States v. Acorn Tech. Fund, L.P.,*
   429 F.3d 438 (3d Cir. 2005) ................................................................. 13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION

*Wallace v. Loomis*,
    97 U.S. 146 (1877) ........................................................................................ 9

*Woodbury v. Pickering Lumber Co.*,
    1 F. Supp. 92 (W.D. Mo. 1932).................................................................. 9

**Statutes**

28 U.S.C. § 959(a) .......................................................................................... 13

28 U.S.C. § 2001(b) ................................................................................... passim

**Rules**

Fed. R. Civ. P. 65 ........................................................................................... 14

**Other Authorities**

65 *Am.Jur.2d* § 189, (2001) .......................................................................... 16

iii

Stephen J. Donell, the Court-appointed liquidating receiver (the "Receiver") of (a) real property located in the city of Los Angeles, county of Los Angeles, state of California, commonly known as 3100 Benedict Canyon Drive, Beverly Hills, California 90210-1033, Parcel Number 4382-001-023 (the "Benedict Canyon Real Property"), and (b) all furnishings and other personal property purchased for and/or located at the Benedict Canyon Real Property (collectively, the "Receivership Property"), pursuant to the Stipulated Final Order for Permanent Injunction and Monetary Judgment against Ahmad ("Andy") Khawaja, AlliedWallet, Inc., Allied Wallet, Ltd., GTBill, LLC, and GTBill Ltd.  issued on June 7, 2019 ("Receiver Order"), Doc. No. 30, hereby submits the following memorandum of points and authorities in support of his *ex parte* emergency application for an order authorizing (1) (1) employment of Philip Seymour/Keller Williams as real estate broker and appraiser; (2) appointment of Brentwood Property Appraisal, Inc. and Lipsey Appraisal Service as additional appraisers; (3) priority borrowing and issuance of receivership certificates; (4) employment of Diamond McCarthy LLP as General Counsel effective June 7, 2019; (5) refund of prorated mortgage payment to defendant Ahmad ("Andy") Khawaja ("Khawaja"); and (6) for an order staying actions affecting the Receivership Property, including actions by utility companies and/or the lender, Wells Fargo Bank, N.A. ("Wells Fargo") to declare defaults; create, perfect or enforce liens; terminate service contracts; or take other action against the Receivership Property pending the Receiver's liquidation of the Receivership Property, without prior order of the Court.

## I.    RELEVANT FACTUAL BACKGROUND

### A. Procedural History

On June 7, 2019, this Court entered the Receiver Order, appointing Stephen J. Donell as the liquidating receiver of the Benedict Canyon Real Property, a large single family luxury residence of over 12,500 square feet on over 1.5 acres in the Beverly Hills Post Office area of Los Angeles near Mulholland Drive.  The Receiver

is also receiver of the furnishings and other personal property purchased for and/or located at the Benedict Canyon Real Property with the power and duty to liquidate the personal property.   The Receiver Order was the result of a stipulation by defendants Andy Khawaja, AlliedWallet, Inc., Allied Wallet, Ltd., GTBill, LLC, and GTBill Ltd. by which defendant Khawaja voluntarily gave up his interest in the Receivership Property to be liquidated and the proceeds turned over to plaintiff Federal Trade Commission toward satisfaction of his obligations under the Stipulated Judgment.

The receivership estate consists solely of the tangible assets comprising the real and personal property related to the Benedict Canyon Real Property.  There are no cash or other liquid assets.   There are no funds with which to pay for insurance, to pay for maintenance and preservation expenses for the upkeep of the Receivership Property until it can be sold, and to pay the more than $33,000 per month mortgage payment due Wells Fargo Bank, N.A., the holder of the first deed of trust on the Benedict Canyon Real Property.   The deed of trust secures a note in the original principal sum of $8,250,000.

The Receiver has been granted the full powers of an equity receiver over the Receivership Estate.  (Receiver Order, Section X.)  In addition, among other things, the Receiver Order provides that the Receiver must "preserve and protect such assets by undertaking necessary repairs, procuring appropriate insurance, and making required payments for taxes, insurance, assessments, reasonable and necessary maintenance, and any other actions necessary to efficiently manage the assets and maintain their value" and liquidate the assets of the Receivership Estate. (Receivership Order Section X.B. and C.)   In liquidating the assets of the Receivership Estate, the Receiver shall do so "at reasonable costs and in a commercially reasonable fashion."  (Receivership Order Section X.D.)

Liquidation of the Benedict Canyon Real Property in a commercially reasonable fashion requires the Receiver to engage a real estate broker with expertise

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION

in the sale of luxury residences in the area. The Receiver anticipates completing a sale of the property by private sale, which requires the appointment of three appraisers by the Court under 28 U.S.C. section 2001(b). Under the Receiver Order, Section X.D.2, one of the appraisals can be satisfied by a realtor's marketing analysis, which the Receiver proposes to obtain from the real estate broker engaged to sell the Benedict Canyon Real Property. The Receiver has been directed in the Receiver order to file a final report and accounting within six months of his appointment, unless the time is extended, making engagement of the broker and appointment of the appraisers to prepare for an anticipated motion to approve a private sale of the Benedict Canyon Real Property essential to occur as soon as possible.

Most urgent is the Receiver's need for funding to make necessary expenses for the insurance, preservation, repair, and maintenance of the Receivership Property. The receivership estate has no assets other than tangible, illiquid assets, and the Receiver must be allowed to borrow funds to pay for these essential expenses, including the monthly mortgage payment to Wells Fargo. The following charts list the key essential expenses.

| Routine Monthly Expenses | Amount |
|---|---|
| Mortgage payment | $33,229.97 |
| Utilities:<br>*Water, Gas, and Electricity* | $3,500.00 |
| Fountain/Pool maintenance | $775.00 |
| Landscape maintenance, including irrigation, repairs, re-planting, tree trimming | $900.00 |
| Alarm Monitoring/telephone | $300.00 (est.) |
| **Total Monthly Expenses** | **$38,704.97** |

3

| Other Expenses | Amount |
|---|---|
| Annual Insurance Premium | $39,913.33 |
| Appraisals:<br>*Brentwood Property Appraisal, Inc.*<br>*Lipsey Appraisal Service* | $5,000.00 |
| Re-Key | $750.00 |
| Initial Cleanup | $1,500.00 |
| **Total** | **$47,163.33** |

In addition to the foregoing, on June 20, 2019, the Receiver learned of a number of potential repairs needed at the Benedict Canyon Real Property. The Receiver is still evaluating the repairs and the extent to which they are necessary to market and sell the property. For example, the Receiver is advised there is a leak in the pool, and that the irrigation system requires repair. The Receiver may need to repair the irrigation system to avoid damage or loss to the extensive landscaping and to maintain the appearance of the property for marketing purposes. The Receiver anticipates borrowing approximately $200,000 initially, and only seeking additional advances as necessary and over time during the marketing and sale period when additional obligations arise.

Further, the Receiver needs the assistance of counsel to provide legal advice regarding the proposed sale of the Receivership Property, and to prepare and file the pleadings necessary to accomplish these actions.

The Receiver also seeks imposition of a blanket stay of actions affecting the Receivership Property, including actions by utility companies and/or the lender, Wells Fargo Bank, N.A. ("Wells Fargo") to declare defaults, create, perfect or enforce liens, terminate service or contracts or take other action against the Receivership Property

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION

pending the Receiver's liquidation of the Receivership Property, without prior order of the Court.  As set forth in the Declaration of Lesley Anne Hawes, there is a potential threat of a default, attempt to accelerate the loan and pursue foreclosure proceedings by Wells Fargo based on potential defaults under the contractual provisions of the Wells Fargo loan documents, including the imposition of a senior lien for the essential borrowing by the estate requested in the Application, and potentially the imposition of the receivership or other acts or events that may constitute technical defaults under the documents even if the Receiver continues to maintain monthly mortgage payments and even though Wells Fargo's deed of trust is well-protected by substantial equity in the Benedict Canyon Real Property, the property being in the custody of a Court-appointed fiduciary with a duty to liquidate the property which will result in a satisfaction of the Wells Fargo bank loan, and even though the property is subject to Court supervision through the Receiver Order.

## II.   ARGUMENT

### A.   The Court's Broad Supervisory Powers and Discretion in Federal Receiverships

As a preliminary matter, the express terms of the Receiver Order authorize the Receiver to employ counsel. More importantly, "[t]he power of a district court to impose a receivership or grant other forms of ancillary relief . . . derives from the inherent power of a court of equity to fashion effective relief." *SEC v. Wenke*, 622 F.2d 1363, 1369 (9th Cir. 1980). The "primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *SEC v. Hardy*, 803 F .2d 1034, 12 1038 (9th Cir. 1986). To that end, district courts have broad powers to determine what is necessary for the administration and supervision of an equity receivership. *See SEC v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005).  As the Ninth Circuit explained:

> A district court's power to supervise an equity
> receivership and to determine the appropriate action to
> be taken in the administration of the receivership is
> extremely broad. The district court has broad powers and
> wide discretion to determine the appropriate relief in an
> equity receivership.

*Id.* (emphasis added; citations omitted); see also *CFTC v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1115 (9th Cir. 1999) ("This court affords 'broad deference' to the [district] court's supervisory role and 'we generally uphold reasonable procedures instituted by the district court that serve th[e] purpose' of orderly and efficient administration of the receivership for the benefit of creditors.").

Accordingly, this Court has broad powers and wide discretion to grant the Receiver the practical relief he requires in order to fulfill his duties under the Receiver Order which are sought in the Application.

### B. Employment of Broker to List, Market and Sell the Benedict Canyon Real Property, Approval of Proposed Listing Agreement, and Designation of Appraisers and Approval of Their Employment.

The Receiver Order contemplates the Receiver to, at reasonable cost and in a commercially reasonable fashion, liquidate the assets of the Receivership Estate that comprises entirely of the Benedict Canyon Drive Property and the all furnishings and other personal property purchased for and/or located at the Property. (Receiver Order X.D.1.) The Receiver Order also contemplates the use of a realtor's marketing analysis as one of the three appraisals required by 28 U.S.C. § 2001(b). (Receiver Order X.D.2.)

In order to offer the Benedict Canyon Drive Property for sale, the Receiver seeks to employ Philip Seymour and Keller Williams as the Broker to list, market

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION

and solicit offers to purchase the Benedict Canyon Drive Property under the terms of the proposed listing agreement (the "Listing Agreement") attached to the Declaration of Stephen J. Donell as Exhibit "1."

The Listing Agreement provides for a commission of 3.85% of the gross purchase price, with a cooperating broker provision for the sharing of the commission if a third party sales agent or broker obtains the buyer. If the Broker obtains the buyer, the commission will be 2.5%.

The Receiver believes engaging a professional real estate broker who specializes in high-end residential properties such as the Benedict Canyon Drive Property will advance the goals of administrative efficiency, cost reduction and maximizing value for this asset.  Philip Seymour of Keller Williams specializes in the sale of high-end residential properties like the Benedict Canyon Drive Property. Therefore, the Broker is uniquely qualified to serve as the Receiver's real property broker in this matter.  Accordingly, the Receiver respectfully requests that the Court enter an Order authorizing him to employ the Broker as his real estate brokers for the Property in accordance with Appointment Order, the terms described herein, and in the Listing Agreement.

**C.    Appointment and Employment of Appraisers.**

The Receiver Order is clear that all parties and the Court anticipate the Benedict Canyon Real Property will be sold by private sale pursuant to 28 U.S.C. § 2001(b).  The statute provides in pertinent part:

> After a hearing, of which notice to all interested parties shall be given by publication or otherwise as the court directs, the court may order the sale of such realty or interest or any part thereof at private sale for cash or other consideration and upon such terms and conditions as the court approves, if it finds that the best interests of the estate will be conserved

7

thereby. Before confirmation of any private sale, the court shall appoint three disinterested persons to appraise such property or different groups of three appraisers each to appraise properties of different classes or situated in different localities. No private sale shall be confirmed at a price less than two-thirds of the appraised value.

The Broker and the appraisers the Receiver recommends that the Court appoint, Brentwood Property Appraisal, Inc. through Joey Akiba, and Lipsey Appraisal Services, through Craig Lipsey, are disinterested and well qualified to provide appraisals of the Benedict Canyon Real Property.  The Receiver seeks to employ the appraisers as well as to approve the Broker to provide the realtor's marketing analysis the Court authorized under the Receiver Order, Section X.D.2, to provide them sufficient time to appraise the properties and have the appraiser's appointment in anticipation of the Receiver's future motion for approval of a private sale of the Benedict Canyon Real Property.  This is particularly appropriate given the current six-month deadline under the Receiver Order for the Receiver to liquidate the Receivership Property, move for Court approval of the sale and complete the sale.

**D.      Borrowing and Issuance of Receivership Certificates.**

The Receivership Estate consists of the Benedict Canyon Real Property and related personal property.  There is no available cash or liquid assets in the estate whatsoever.

The Court's authority to permit a federal receiver to borrow funds on a priority basis, even ahead of existing liens, in order to pay for expenses to preserve and maintain assets of the receivership estate is long-established under federal law and not subject to question.  *Wallace v. Loomis*, 97 U.S. 146 (1877); *International Trust Co. v.*

*Decker Bros.*, 152 F. 78 (9ᵗʰ Cir. 1907); *Woodbury v. Pickering Lumber Co.*, 1 F. Supp. 92 (W.D. Mo. 1932); *Bank of America, N.A. v. CPX Madison Place Office, L.L.C.*, Civ. Action Nos. 11-168 and 12-23,  2013 WL 5217559 at *1, 4 (E.D.Ky. Sept. 12, 2013). As explained in the *Bank of America, N.A. v. CPX Madison Place Office, L.L.C.* decision, the cases draw a distinction in the Court's authority between those involving public companies, such as a railroad, and private companies.  For private companies, the Court may authorize borrowing by a receiver on a priority, senior lien basis if the funds borrowed will be used for purposes of preserving the assets of the estate:

> In the case of private corporations, the court "may authorize the issua[nce] of receivers' certificates which will displace prior liens on the property if it is necessary to do this for the *preservation* of the property, but it *cannot* operate the business or incur any further expense to the prejudice of prior lienholders without their consent." [Citations omitted.]  Or as one court has summarized, "the court cannot authorize the issue of receiver's certificates for the purpose of improving, adding to, or carrying on the business of the company, without first having the consent of creditors whose liens would be affected thereby."  *Int'l Trust Co. v. Decker Bros.,* 152 F. 78, 84 (9ᵗʰ Cir. 1907).

*Bank of America, N.A. v. CPX Madison Place Office, L.L.C.*, 2013 WL 5217559 at *4.

The Ninth Circuit in *International Trust Co. v. Decker Bros.,* 152 F. 78, quoted in the *Bank of America* decision above made this distinction clear, and clearly found that a court supervising a federal receivership is authorized  to grant a receiver the right to borrow, to issue receiver's certificates, and to provide that the receiver's certificates will be a lien superior to other existing liens on the receivership assets where the expenses relate to the *preservation* of the assets of the estate.  As the Ninth Circuit

9

stated in that decision:

> The court is without authority, except by the consent of the mortgage lienholders, to supplant their liens by receiver's certificates issued for any obligations **other than those arising by way of expenditures for realization and for preserving the property while the business is in course of administration under the receivership.**

*International Trust Co. v. Decker Bros.,* 152 F. at 85 (emphasis added).

Here, all the expenditures the Receiver seeks to borrow money to pay pertain to the preservation of the Receivership Property and its disposition through a sale are appropriately paid through a borrowing with senior lien priority over the existing lien of Wells Fargo, subordinate to administrative expenses and fees of professionals and to the senior lien for accruing taxes on the real property. A substantial percentage of the funds will be used for direct payments to Wells Fargo through the payment of its monthly mortgage payment, and the other expenses also directly benefit Wells Fargo by insuring its collateral, protecting and preserving the value of the collateral through the repairs, maintenance and ongoing expenses of upkeep for the Receivership Property. Payments for the appraisals also benefit Wells Fargo by advancing the Receiver's efforts to sell the Benedict Canyon Real Property since appraisals are required by statute to approve and confirm a sale of real property by a receiver by private sale under section 2001(b).

At present, the Receiver anticipates issuing Receivership Certificates in an aggregate amount not to exceed $400,000, absent further authorization from the Court. The Receivership Certificate(s) will bear simple interest at the rate of 15%, with a maturity date of not more than 18 months from the date of issuance, and be in a form substantially similar to the "Receivership Certificate No. ___," attached as Exhibit "3" to the Declaration of Stephen J. Donell. The Receiver requests that the Court approve

10

this proposed borrowing on the terms and conditions set forth and the form of the proposed Receiver's Certificate.

### E. Employment of Diamond McCarthy LLP as the Receiver's General Counsel.

The Receiver has determined that he requires the assistance of counsel to: (1) (1) provide legal advice regarding liquidating the assets of the Receivership Estate, including legal advice related to the listing, marketing, sale, and transfer of the Receivership Estate assets to third parties; (2) assist with the negotiation and documentation of any agreements related to the administration, sale or other disposition of the estate, including the Benedict Canyon Real Property and the personal property comprising the Receivership Property, including any purchase and sale agreement(s) and related documents; (3) advise the Receiver regarding, and prepare and file pleadings related to, the employment of the Receiver's real estate broker, the three appraisers to be designated under 28 U.S.C. section 2001(b), the motion for approval of any sale of the Receivership Property and the required procedures for notice and confirmation of any sale of the Receivership Property under 28 U.S.C. sections 2001(b), 2002 and 2004; (4) prepare and file other pleadings required by the Receiver or the Court in connection with his administration of the receivership estate; and (5)  provide legal advice regarding the legal issues in the administration of the estate, including on any issues that may arise from necessary repairs, procuring appropriate insurance, and making required payments for taxes, insurance, assessments, reasonable and necessary maintenance, and any other actions necessary to manage the Receivership Property. Therefore, the Receiver desires to employ Diamond McCarthy as his counsel.

Diamond McCarthy is well-qualified to serve as the Receiver's general counsel in this matter.  The firm employs attorneys possessing significant experience and

11

skill in receiverships, real estate law, commercial law, and other matters relevant to the instant receivership.  The attorneys at the firm have also served as and represented other types of fiduciaries such as chapter 11 bankruptcy trustees and plan administrators so are well familiar with fiduciary representation.  Attorney Kathy Bazoian Phelps at Diamond McCarthy and has represented receivers and trustees - including equity receivers - for over 27 years.  Attached to the Declaration of Christopher D. Sullivan as Exhibit "1" is the summary of qualifications of Diamond McCarthy and of the attorneys anticipated to perform the primary legal services for the Receiver on this matter.  Also included in Exhibit "2" is a copy of Diamond McCarthy's regular hourly billing rates for 2019.  Diamond McCarthy has agreed to cap its billing rates at $625 per hour for this engagement.

As is appropriate in equity receivership matters, and in order to help minimize the cost to the estate of the Receivership Entity, Diamond McCarthy anticipates making use, where appropriate, of junior associates and paralegals.

**F.    .Stay of Actions Against the Receivership Property**

The authority of the receivership court to issue blanket stay orders, protecting the court's in rem jurisdiction over the assets of the receivership estate by prohibiting the pursuit of claims against receivership entities and receivership assets is well-established in the case law.  For example, in *Securities  and Exchange Commission v. Wencke*, 622 F.2d 1363 (9th Cir. 1980), the Court of Appeals for the Ninth Circuit enforced an order for a blanket stay of actions against the receivership to protect the assets of the estate during the receivership and in the exercise of the court's equitable jurisdiction in the administration of the receivership.

In *Wencke,* the Ninth Circuit expressly found the blanket stay was "necessary to achieve the purposes of the receivership." *Securities and Exchange Commission v. Wencke*, 622 F.2d at 1369. *See also Securities and Exchange Commission v. Wolf*, 576

F.2d 217, 221 n. 8 (9th Cir. 1978) ("The receivership court has broad equitable powers to prevent interference with the administration of the estate by blanket stay orders as well as injunctions against particular actions, including actions which might otherwise be permissible under [28 U.S.C. Section 959(a)"); *Federal Trade Commission v. Productive Marketing, Inc.*, 136 F.Supp.2s 1096, 1105-1106 (C.D. Cal. 2001) (upholding injunction against actions by non-parties and analyzing cases supporting that proposition, finding that "An order issued to preserve the assets of a receivership estate is a class example of an in rem injunction" imposed on parties as well as non-parties regardless of notice to the non-parties); 65 *Am.Jur.2d* Receivers § 189, pp. 783-84 (2001).

In *Securities and Exchange Commission v. Byers*, 609 F.3d 87 (2d. Cir. 2010), the Second Circuit Court of Appeals upheld a blanket injunction in a federal equity receivership such as that imposed in the SEC Action against challenges by a committee of creditors. Relying in part on the Ninth Circuit's decision in *Wencke* and the Sixth Circuit Court of Appeals' decision in *Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543 (6th Cir. 2006), which also upheld a blanket injunction similar to that included in the Receivership Order here, the Second Circuit upheld what it termed the "anti-litigation injunction" issued by the district court, explaining, "An anti-litigation injunction is simply one of the tools available to courts to help further the goals of the receivership." *Securities and Exchange Commission v. Byers*, 609 F.3d at 93.

The Third Circuit Court of Appeals has also upheld blanket stays of litigation in the context of a federal receivership. In *United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 443 (3d Cir. 2005), the court explained the policies and practical reasons supporting these injunctions:

> [t]he purposes of a receivership are varied, but the purpose of imposing a stay of litigation is clear. A receiver must be given a chance to do the important job of marshaling and

untangling a company's assets without being forced into court by every investor or claimant.

The authority of the receivership court to issue blanket stays against actions affecting the receivership is found in the receivership court's exclusive jurisdiction over the receivership res. *See Diner's Club v. Bumb*, 421 F.2d 396, 398 (9th Cir. 1970) (finding that jurisdiction to issue injunctions and writs to protect the estate from interference is based in part on "the inherent power of a court in equity to protect its control of a res in its custody"); *In re Ethington*, 150 B.R. 48, 51 (Bankr. D. Idaho 1993) ("It has long been a principle of law that property held in the possession of a court lies within the exclusive jurisdiction of that court" citing *Murphy v. John Hofman Co.*, 211 U.S. 562 (1909)). The power of the receivership court to issue a blanket stay of actions "is broader than the court's authority to grant or deny injunctive relief under F.R. Civ.P. 65. [Citation omitted.]" *Securities and Exchange Commission v. Universal Financial*, 760 F.2d 1034, 1038 (9th Cir. 1985).

The numerous federal circuit and district court decisions in federal agency civil enforcement actions demonstrate that district courts overseeing federal equity receiverships routinely issue a blanket order enjoining the filing or continued prosecution of claims against parties subject to the receivership and that would affect against the assets of the receivership estate. *Securities and Exchange Commission v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980); *Securities and Exchange Commission v. Byers*, 609 F.3d 87, 93 (2d. Cir. 2010); *Securities and Exchange Commission v. Universal Financial*, 760 F.2d 1034 (9th Cir. 1985). These cases impose blanket stays of actions applicable to all creditor claims because of the adverse effects and interference that commencement or continuation of litigation against the receivership entities and assets would have on the estate and the Receiver's ability to perform his duties. *See Securities and Exchange Commission v. Byers*, 690 F.3d 87 (creditors committee seeking relief from the receivership court injunction); *Securities and*

14

*Exchange Commission v. Callahan*, 2 F.Supp.2d 427 (E.D.N.Y. 2014) (denying motion to lift blanket stay by lender); *Securities and Exchange Commission v. Vescor Capital Corp.*, 599 F.3d 1189 (10th Cir. 2010) (affirming district court order imposing blanket stay and denying lender relief from the blanket stay).

A blanket stay of actions against the Receivership Property as requested is essential to protect the receivership estate from acts that could hinder the Receiver's sale of the Receivership Property, impose additional expense and burdens on the estate, or potentially subject the estate to the risk of loss or injury to the Receivership Property, such as through disruption in utility or other services if there is a modest time delay in obtaining the funding and paying the property expenses as the funding is put in place through the Receiver's Certificate, the lender's title policy is issued, and the deed of trust is recorded.  The threat of a potential default and acceleration through a technical default under the Wells Fargo loan documents exists, though the Receiver intends to fully comply with the monetary obligations of the loan through the borrowing.

### III.   CONCLUSION

For the foregoing reasons, the Receiver respectfully requests that this Court grant the relief requested in the Application and as reflected in the proposed order submitted herewith.

DATED: June 24, 2019                    DIAMOND McCARTHY LLP

By:  /s/ *Christopher D. Sullivan*
Christopher D. Sullivan
*Proposed Counsel for Stephen J. Donell,*
*Liquidating Receiver*